**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

KEITH DOMICZ,                          :
                                       :     Civil Action No. 07-0907 (RMB)
           Petitioner,                 :
                                       :
       v.                              :     **OPINION**
                                       :
GEORGE O. ROBINSON, et al.,            :
                                       :
           Respondents.                :


**APPEARANCES:**

Petitioner pro se                      Counsel for Respondents
Keith Domicz                           Leslie-Ann M. Justus
Hansen House                           Deputy Attorney General
41 Aloe Street                         RJ Hughes Justice Complex
Egg Harbor City, NJ 08215              P.O. Box 086
                                       Trenton, NJ 08625


**BUMB**, District Judge

        Petitioner Keith Domicz, a prisoner confined at Southern

State Correctional Facility in Delmont, New Jersey, at the time

he submitted this Petition, has submitted a petition for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents

are Administrator George O. Robinson and the Attorney General of

New Jersey.

        For the reasons stated herein, the Petition must be denied.

I.  <u>BACKGROUND</u>

The relevant facts are set forth in the opinion of the
Supreme Court of New Jersey.[1]

> This case involves defendant Keith R. Domicz's
> challenge to the constitutionality of a police search
> of his home that resulted in the seizure of nearly one
> hundred marijuana plants and assorted growing
> equipment.  After a testimonial hearing, the trial
> court denied defendant's motion to suppress the
> evidence seized from his home, determining that
> defendant knowingly and voluntarily consented to the
> search. ...
>
> ...
>
> At a suppression hearing, the State and defendant
> presented conflicting accounts of what occurred at
> defendant's home on July 27, 2000.[FN1]  Detective
> William Peacock of the New Jersey State Police
> Marijuana Eradication Unit testified that defendant
> first attracted his attention six months earlier when
> he learned that defendant had received at his home in
> the Williamstown section of Monroe Township, Gloucester
> County, four packages of specialized horticultural
> equipment "commonly used to grow marijuana."  That the
> equipment also had legitimate uses did not dampen the
> detective's interest.  As part of the detective's
> investigation, a grand jury subpoena [FN2] was issued
> for the electrical use records of defendant's residence
> and two "comparable houses."  With those records, the
> State Police supposedly could compare defendant's
> electrical usage in his home with similarly situated
> consumers.  Those records, it appears, did not provide
> any useful information linking defendant's electricity
> consumption with the suspected harvesting of marijuana
> in his home.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding
instituted by an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State court, a
determination of a factual issue made by a State court shall be
presumed to be correct.  The applicant shall have the burden of
rebutting the presumption of correctness by clear and convincing
evidence."

[FN1] This statement of facts is based solely on the evidence presented at the suppression hearing.

[FN2] Although the suppression hearing transcript only refers to the issuance of a subpoena, the State represented to the Court at oral argument that the subpoena was issued by the grand jury.

About two months before the search, Detective Peacock conducted a thermal scan of defendant's home to determine whether an abnormal amount of heat was emanating from it.[FN3]  Detective Peacock did not seek authorization for the thermal scan by means of a search warrant because he did not think that a warrant was necessary.[FN4]  The thermal scan as well as Detective Peacock's frequent drives by defendant's home on his commute to work did not provide any investigative leads.

[FN3] "Thermal images detect infrared radiation, which virtually all objects emit but which is not visible to the naked eye.... [I]t operates somewhat like a video camera showing heat images." Kyllo v. United States, 533 U.S. 27, 29-30, 121 S.Ct. 2038, 2041, 150 L.Ed.2d 94, 99 (2001).  By conducting a thermal scan of defendant's home, police could determine whether an unusual amount of heat was coming from the building, which might indicate the use of specialized growth equipment, such as grow lamps.

[FN4] The thermal scan of defendant's house was conducted prior to the United States Supreme Court's decision in Kyllo v. United States, supra.  In that case, decided June 11, 2001, the Court held that use of a thermal imaging device by police to detect the amount of heat emanating from a person's home constituted a search for Fourth Amendment purposes, and thus was unconstitutional absent a warrant supported by probable cause.  533 U.S. at 40, 121 S.Ct. at 2046, 150 L.Ed.2d at 106.

3

On the rainy morning of July 27, 2000, accompanied by two State Police detectives, a Monroe Township Police detective, and a Gloucestor County prosecutor's Office detective, Detective Peacock went to defendant's home for a "knock and talk." The goal was to speak with defendant and, if possible, gain his consent to search his home. Detective Peacock admitted that he did not have probable cause to secure a search warrant.

The officers were all dressed in plain clothes. Three proceeded to defendant's front door while Detective Peacock and State Police Detective Dennis Donovan approached the back door by passing through a gate that separated the driveway from the rear of the residence. Because of the location of cars in defendant's driveway, it appeared to Detective Peacock that the back door was used as an entrance to the home. Immediately after Detective Peacock knocked on the door, State Police Detective Sergeant Joe DiBiase advised him that defendant was at the front door. Detectives Peacock and Donovan then joined the other officers at the front of the house. In a calm and professional tone, with the other officers standing behind him, Detective Sergeant DiBiase identified himself to defendant and told him, "We need to speak to you." Defendant invited the officers inside, saying, "Come on in, get out of the rain."

As soon as Detective Peacock entered the house, he "detected a strong odor of raw marijuana." Detective Peacock introduced himself as a member of the State Police Marijuana Eradication Unit and said, "We're here to request permission to search your residence." They were standing in a small room, about eight or ten feet square, adjacent to the kitchen, where defendant's girlfriend was located. Detective Peacock then presented to defendant a consent-to-search form and began reading and explaining the form to him. At that point, defendant put his head down and said, "I have 40 plants in the basement." Detective Peacock responded, "We'll get to that in a minute," and continued reading the consent form in its entirety to defendant, who was listening attentively and looking at the form. Among other things, Detective Peacock advised defendant that he had the right to refuse to give consent to the search. At no point did the other detectives surround, hover over, or intimidate defendant.

4

After the form was read to him, defendant authorized the search by signing the form beneath the following acknowledgement: "I have knowingly and voluntarily given my consent to the search ... and fully understand that I have the right to refuse giving my consent to search."

The detectives then searched the house. At the foot of the basement stairs, they found thirty-nine marijuana plants stashed in garbage bags. In a makeshift plywood room in the basement, they found forty-four actively growing marijuana plants, as well as apparatus for cultivating marijuana plants. They also found nine clear plastic bags containing processed marijuana in the kitchen freezer; three bags of marijuana, a digital scale, and a bag of methamphetamine in the master bedroom; and a bag of marijuana in another bedroom. In addition, Detective Peacock and two of the officers observed in plain view another fourteen marijuana plants growing next to the garage.

Defendant offered a starkly different version of the events surrounding the search. Defendant testified that at around 7:00 or 8:00 a.m. on July 27, 2000, three detectives arrived at his front door. The "head guy" showed him a badge and stated that he had a search warrant, and then, without asking permission, the three detectives entered his house. The detectives then opened the back door, letting in two other officers. Defendant was handcuffed, told to sit on a couch where his girlfriend was also seated, and read his rights. Approximately one hour later, the detectives presented a document to defendant without reading or explaining it to him. Defendant signed the folded document as he was told to do. He denied that he ever read the document or was ever advised of his right to refuse to consent to the search. He also suggested that the detectives concealed the contents of the document by folding it in half before he signed it.

Retired State Police Lieutenant Vincent Bellaran testified for the defense. He stated that the detectives involved in the case did not use the most recently issued consent form, which apparently had been adapted to deal with motor vehicle stops. Last, the trial court did not allow defense witness Alan Hart, a

polygraph examiner, to testify about the results of a
polygraph examination taken by defendant.

In denying defendant's motion to suppress, the
trial court determined that the State had carried its
burden of proving by clear and convincing evidence that
defendant voluntarily and knowingly consented to the
search of his house and garage.  The court made
specific credibility findings, accepting Detective
Peacock's testimony and rejecting defendant's testimony
as unbelievable.  The court did not credit defendant's
argument that the detectives tricked and coerced him
into signing the consent form or that they had folded
it in half to conceal its true nature.  The court
accepted as truthful Detective Peacock's assertion that
he smelled the odor of raw marijuana upon entering
defendant's house.  The court also weighed favorably
Detective Peacock's candid admission that he did not
have probable cause to conduct a search at the time he
proceeded with the "knock and talk" with defendant.
The court found Lieutenant Bellaran's testimony to have
no value because the Lieutenant did not specify whether
the consent "forms are different for motor vehicle
searches as opposed to" other kinds of searches.

State v. Domicz, 188 N.J. 285, 288-93 (2006).

After his motion to suppress was denied, Petitioner entered

into a plea agreement with the State.  Petitioner pled guilty to

maintaining or operating a controlled dangerous substance ("CDS")

facility, in violation of N.J.S.A. 2C:35-4, and all other charges

were dropped.  The trial court sentenced Petitioner to ten years

imprisonment with a 40-month parole ineligibility period, imposed

financial penalties, and suspended his driving privileges for

twelve months.  Petitioner appealed the denial of his suppression

motion.

The Appellate Division reversed the trial court's

suppression order and vacated the conviction.  The Appellate

6

Division found that the thermal scan violated both the Fourth
Amendment to the U.S. Constitution and Article I, Paragraph 7, of
the New Jersey Constitution.  In addition, the Appellate Division
found that the acquisition of the utility records violated the
New Jersey Constitution.  The appellate panel remanded for a new
hearing to determine whether these prior unlawful searches, along
with the fact that some officers may have acted unlawfully in
entering the rear curtilage of Petitioner's home, "tainted" the
consent given by Petitioner to a later search of his home.  State
v. Domicz, 377 N.J. Super. 515 (2005).  In its opinion, the
Appellate Division relied extensively on U.S. Supreme Court
opinions explaining Fourth Amendment rights and the prophylactic
"exclusionary rule."

        The State petitioned for certification and the Supreme Court
reversed the Appellate Division and reinstated the judgment.
Petitioner did not seek a writ of certiorari from the U.S.
Supreme Court, nor has he pursued any state motions for post-
conviction relief.

        In this Amended Petition, Petitioner asserts five grounds
for relief: (1) the warrantless thermal-imaging scan of
Petitioner's home constituted an unreasonable search, violating
the Fourth Amendment and the Fourteenth Amendment, (2) the
warrantless seizure of Petitioner's electric bills was a
violation of the Fourth Amendment, (3) Petitioner's consent to

7

search his home was not voluntarily and knowingly made, so the search violated the Fourth Amendment, (4) the exclusion of Petitioner's polygraph testimony during the suppression hearing was an "abuse of discretion," in violation of the Due Process Clause of the Fourteenth Amendment, (5) police violated Petitioner's Fourth Amendment rights when they approached his home from the rear, without a warrant.

Respondents contend that Petitioner has failed to exhaust Grounds Two and Four.[2]  Because these claims are meritless, this Court need not determine whether they are exhausted.  <u>See</u> 28 U.S.C. § 2254(b)(2).

## II.   28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

---

[2] Respondents' contention that Petitioner has failed to allege a violation of federal law in Grounds Two and Four is belied by the plain language of the allegations in the Petition, in which Petitioner specifically refers to the constitutional provisions upon which he relies.

8

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context

where it should apply," (although the Supreme Court expressly declined to decide the latter).  Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent."  Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v.

10

Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).]

### III.  ANALYSIS

A.  Fourth Amendment Claims

Petitioner asserts four claims under the Fourth Amendment: (1) the warrantless thermal-imaging scan of Petitioner's home constituted an unreasonable search, violating the Fourth Amendment and the Fourteenth Amendment, (2) the warrantless

11

seizure of Petitioner's electric bills was a violation of the Fourth Amendment, (3) Petitioner's consent to search his home was not voluntarily and knowingly made, so the search violated the Fourth Amendment, (4) police violated Petitioner's Fourth Amendment rights when they approached his home from the rear, without a warrant.

In its review of the decision of the Appellate Division, vacating Petitioner's conviction, the Supreme Court of New Jersey rejected the Fourth Amendment claims presented to it.[3]

> We begin by addressing whether the warrantless conducting of a thermal scan of defendant's home and the acquiring of defendant's electric utility records pursuant to a grand jury subpoena constituted "unlawful conduct" that could taint the consent search of defendant's home. ...

> ... In June 2001, the constitutional landscape became clear when in a five-four decision the United States Supreme Court issued Kyllo v. United States, [533 U.S. 27 (2001)].  There, the Court held that when law enforcement officials "use[] a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion, the surveillance is a 'search' and is presumptively unreasonable without a warrant" under the Fourth Amendment.  533 U.S. at 40, 121 S.Ct. at 2046, 150 L.Ed.2d at 106.

> We need not decide here whether Kyllo should retroactively apply to this case, which was on appeal at the time of the United States Supreme Court's decision, or whether this State would have come to a similar result under Article I, Paragraph 7 to the one reached by the Kyllo majority.  From the record before

---

[3] The question whether the seizure of the electric utility bills violated the Fourth Amendment was not presented to the Supreme Court of New Jersey.

us, Detective Peacock learned nothing of value from the thermal scan of defendant's home.  Accordingly, there was nothing wrongfully seized that law enforcement could exploit to defendant's detriment. ...  Thus, even if Kyllo applied, we fail to see how the thermal scan affected the later consent search.

> ...

We next determine that whatever privacy interest attached to defendant's utility records, the acquiring of those records by a grand jury subpoena satisfied Article I, Paragraph 7 of the State Constitution.  The appellate panel appears to concede that no expectation of privacy recognized under the Fourth Amendment was breached when law enforcement officials obtained defendant's electric utility records through a grand jury subpoena. ...

> ...

In [State v. ]McAllister, [184 N.J. 17 (2005),] we acknowledged that an account holder's privacy interest in his bank records under the New Jersey Constitution must be weighted against the legitimate investigatory needs of law enforcement.  Thus, we held "that the issuance of a grand jury subpoena duces tecum based on a relevancy standard satisfies the constitutional prohibition against improper governmental intrusion."  We declined to impose a probable cause standard as a pre-condition to law enforcement officials obtaining a subpoena for bank records.  Instead, we applied the prevailing standard for the issuance of a grand jury subpoena, requiring only that the records sought "bear some possible relationship, however indirect, to the grand jury investigation."

We discern no basis for treating electric utility records differently from bank records. ...  Because there was no official wrongdoing in acquiring the records, the Appellate Division had no basis to reverse the order denying defendant's motion to suppress or to remand for a determination whether "prior unlawful conduct" tainted the consent search.

We do not agree with the Appellate Division that the trial court "mistakenly rejected the significance of the fact that the officers, by passing through a

gate and entering defendant's backyard, had entered the
curtilage of defendant's home without consent, without
a warrant and without probable cause." In rendering
its decision, the trial court stated that it found
Detective Peacock's testimony "to be credible and
believable." In recounting that testimony, the court
recalled that Detective Peacock and a fellow officer
passed through the rear gage and entered the curtilage
for the purpose of knocking on defendant's back door
and speaking with him. The position of the parked cars
in defendant's driveway led the officers to believe
that the back door was used by residents and visitors.
The detectives did not observe any criminal wrongdoing
or contraband before they were called to the front of
the house where defendant had answered the door.
Accepting that explanation as truthful, as the trial
court did, there was no unconstitutional incursion of
the curtilage of defendant's home.

Curtilage is land adjacent to a home and may
include walkways, driveways, and porches. State v.
Johnson, 171 N.J. 192, 208-09, 793 A.2d 619 (2002).
Whether the Fourth Amendment safeguards an area of
curtilage depends on a consideration of various
factors, including "'whether the area is included
within an enclosure surrounding the home, the nature of
the uses to which the area is put, and the steps taken
by the resident to protect the area from observation by
people passing by.'" Ibid. (quoting United States v.
Dunn, 480 U.S. 294, 301, 107 S.Ct. 1134, 1139, 94
L.Ed.2d 326, 334-35 (1987)). ... In other words, when
a law enforcement officer walks to a front or back door
for the purpose of making contact with a resident and
reasonably believes that the door is used by visitors,
he is not unconstitutionally trespassing on to the
property. ...

In light of the trial court's findings, there was
no unconstitutional intrusion onto defendant's property
when Detective Peacock and another officer approached
the back door. Accordingly, a remand on this issue is
unnecessary.

State v. Domicz, 188 N.J. 285, 295-303 (2006) (citations

omitted).

The Fourth Amendment to the U.S. Constitution, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, see Mapp v. Ohio, 367 U.S. 643 (1961), provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., Amend. IV.

Generally speaking, evidence gained through a Fourth Amendment violation may not be used against a defendant at trial. See Mapp v. Ohio, 367 U.S. at 654-55; Weeks v. United States, 232 U.S. 383, 391-93 (1914). This "exclusionary rule" is a judicially-created remedy to safeguard Fourth Amendment rights by deterring police conduct that violates those rights. Stone v. Powell, 428 U.S. 465, 486 (1976).

> In Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court examined the nature of the exclusionary rule, which it characterized as a "judicially created means of effectuating the rights secured by the Fourth Amendment" and balanced its utility as a deterrent against the risk of excluding trustworthy evidence and thus "deflect[ing] the truthfinding process." Id. at 482, 490, 96 S.Ct. 3037. Finding that, as to collateral review, the costs of the exclusionary rule outweighed the benefits of its application the Court concluded that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at

15

> his trial." <u>Id.</u> at 494, 96 S.Ct. 3037.  While the
> federal courts are not thus deprived of jurisdiction to
> hear the claim, they are -- for prudential reasons --
> restricted in their application of the exclusionary
> rule.  <u>Id.</u> at 494 n. 37, 96 S.Ct. 3037.

<u>Marshall v. Hendricks</u>, 307 F.3d 36, 81-82 (3d Cir. 2002), <u>cert.</u>

<u>denied</u>, 538 U.S. 911 (2003).  "Whether the petitioner actually

took advantage of the opportunity is irrelevant; so long as the

opportunity was available, the bar against raising the Fourth

Amendment claims on collateral review applies." <u>Jackson v.</u>

<u>Diguglielmo</u>, 2006 WL 1147517, 6 (E.D. Pa. 2006) (citing <u>Cohen v.</u>

<u>Gillis</u>, 2004 WL 1622026, 3 (E.D. Pa. 2004)).

    Moreover, "[a]n erroneous or summary resolution by a state

court of a Fourth Amendment claim does not overcome the bar."

<u>Gilmore v. Marks</u>, 799 F.2d 51, 57 (3d Cir. 1986).

    The Court of Appeals for the Third Circuit has recognized

that there may be instances in which a full and fair opportunity

to litigate was denied in state court.  <u>See</u>, <u>e.g.</u>, <u>Gilmore v.</u>

<u>Marks</u>, 799 F.2d at 57 (observing that a state's "failure to give

at least colorable application of the correct Fourth Amendment

constitutional standard" might amount to a denial of the

opportunity for full and fair litigation); <u>Boyd v. Mint</u>, 631 F.2d

247, 250 (3d Cir. 1980) (assuming, without deciding, that

"opportunity" simply means providing procedures by which one can

litigate a Fourth Amendment claim, <u>Stone v. Powell</u> does not

preclude federal habeas relief when "'the defendant is precluded

16

from utilizing it by reason of an unconscionable breakdown in that process'" (quoting <u>Gates v. Henderson</u>, 568 F.2d 830, 840 (2d Cir. 1977), <u>cert. denied</u>, 434 U.S. 1038 (1978))).

This case does not present one of those instances in which a full and fair opportunity to litigate was denied in state court. Petitioner was provided a pre-trial suppression hearing and two levels of appeal from the denial of his suppression motion. Petitioner has been afforded a full and fair opportunity in the New Jersey court system to litigate all of his Fourth Amendment claims, whether or not he actually presented all of those claims to the state courts.  Accordingly, this Court cannot grant Petitioner habeas relief on these grounds.

B.    <u>Polygraph Evidence</u>

Plaintiff contends that the refusal to consider polygraph evidence at his suppression hearing violated his right to due process under the Fourteenth Amendment.  The Supreme Court of New Jersey found no error under state law in the refusal to consider Petitioner's proffered polygraph evidence.

> At the suppression hearing, to bolster his credibility, defendant attempted to introduce testimony about the results of an unstipulated private polygraph test he took in his lawyer's office eighteen months after the search of his home. ...
>
> The trial court declared Dr. Hart's testimony irrelevant and barred him from testifying, presumably based on this Court's decision in <u>State v. McDavitt</u>, 62 N.J. 36, 46, 297 A.2d 849 (1972), in which we held that the results of a polygraph examination are admissible only "in a criminal case when the State and defendant

17

> enter into a stipulation to have defendant submit to a polygraph test."  The court asserted that determining credibility was the motion judge's function.
>
> ...
>
> There is a lack of scientific consensus concerning the reliability of polygraph evidence, which in turn is reflected in the disagreement among state and federal courts concerning the admissibility of such evidence. United States v. Scheffer, 523 U.S. 303, 309-12, 118 S.Ct. 1261, 1265-66, 140 L.Ed.2d 413, 419-21 (1998). In criminal cases, either in a jury or non-jury setting, the vast majority of states either ban polygraph evidence altogether or do not admit such evidence absent a stipulation between the state and the defendant. ...
>
> We realize that some may question the very premise of McDavitt, that polygraph test evidence can be reliable in some circumstances and for some purposes but not others.  This is not the occasion to revisit McDavitt's narrow holding.  On the record before us, we are not prepared to extend McDavitt to unstipulated polygraph examinations, even in a suppression hearing presided over by a judge. ...

State v. Domicz, 188 N.J. 285, 310- (2006) (citations and footnote omitted).

It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S. 764, 680 (1990))).  Accordingly, Petitioner cannot obtain relief for any errors in state law evidentiary rulings, unless they rise to the level of a deprivation of due process.  Estelle, 502 U.S.

18

at 70 ("'the Due Process Clause guarantees fundamental elements
of fairness in a criminal trial'") (quoting <u>Spencer v. Texas</u>, 385
U.S. 554, 563-64 (1967)).

For a habeas petitioner to prevail on a claim that an
evidentiary error amounted to a deprivation of due process, he
must show that the error was so pervasive as to have denied him a
fundamentally fair trial.  <u>Keller v. Larkins</u>, 251 F.3d 408, 413
(3d Cir.), <u>cert. denied</u>, 534 U.S. 973 (2001).

Here, the Supreme Court of New Jersey has determined that
there was, in fact, no error of state law.  Thus, no deprivation
of due process rights could have flowed from the non-existent
state law evidentiary error.

Petitioner did not, in state court, assert the claim that he
had a direct due process right to present the excluded polygraph
evidence.  In any event, the Supreme Court of the United States
has never held that a criminal defendant has a due process right
to the admission of purportedly exculpatory polygraph evidence.
At least two federal appellate courts have held that a criminal
defendant's constitutional right to a fair trial is not infringed
when the prosecutor refuses to stipulate to the admissibility of
polygraph test results.  <u>See</u> <u>Milano v. Garrison</u>, 677 F.2d 374
(4th Cir. 1981); <u>Jackson v. Garrison</u>, 677 F.2d 371 (4th Cir.
1981); <u>Conner v. Auger</u>, 595 F.2d 407, 411 (8th Cir.), <u>cert.
denied</u>, 444 U.S. 851 (1979); <u>United States v. Bohr</u>, 581 F.2d

19

1294, 1313 (8th Cir.), <u>cert. denied</u>, 439 U.S. 958 (1978).
Accordingly, Petitioner is not entitled to relief on this claim.

IV.   <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Petitioner has not demonstrated that jurists of reason would disagree with this Court's resolution of his claims.  No certificate of appealability shall issue.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.

s/Renée Marie Bumb
Renée Marie Bumb
United States District Judge

Dated: April 8, 2008

20